**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

ARTHUR VALDEZ,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 2:24-CV-0907-DMC

MEMORANDUM OPINION AND ORDER

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 4 and 6, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the Court are the parties' briefs on the merits, ECF Nos. 15 and 18.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1 Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2 If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3 If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

/ / /

Step 4 — If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

Step 5 — If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on October 21, 2021. See CAR 23.[1] In the application, Plaintiff claims disability began on September 1, 2021. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on May 18, 2023, before Administrative Law Judge (ALJ) William Spalo. In a June 2, 2023, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): cervical spinal spondylosis and left shoulder degenerative arthrosis.
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations.
>
> 3. The claimant has the following residual functional capacity: the capacity to perform light work as defined in 20 CFR 404.1567(b) except: he is unable to crouch or crawl; he could occasionally balance, stoop, kneel, and climb ladders, ropes, scaffolds, ramps, or stairs; and he must avoid all exposure to dangerous moving machinery and unprotected heights.
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant can perform past relevant work as a hotel general manager and a food and beverage manager.
>
> See id. at 25-31.

After the Appeals Council declined review on January 25, 2024, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1] Citations are to the Certified Administrative Record (CAR) lodged on May 20, 2024, ECF No. 8.

## III. DISCUSSION

In his opening brief, Plaintiff argues: (1) the ALJ erred in assessing the severity of Plaintiff's impairments at Step 2; and (2) the ALJ failed to provide sufficient reasons for rejecting Plaintiff's subjective statements and testimony of pain at Step 4.

### A. Severity Determination

To qualify for benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[2] In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

At Step 2, the ALJ evaluated the severity of Plaintiff's impairments. See CAR 25-26. The ALJ considered the limiting effects of the following impairments: (1) cervical spinal spondylosis, (2) left shoulder degenerative arthrosis, (3) ulnar neuropathy at the right elbow, and (4) bilateral carpal tunnel syndrome. See id. The ALJ concluded that Plaintiff's cervical spondylosis and left shoulder degenerative arthrosis constituted severe impairments. See id.

---

[2] Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

As to the Plaintiff's ulnar neuropathy at the right elbow, and bilateral carpal tunnel syndrome, the ALJ stated:

> . . .[T]hese impairments are not severe. For example, the claimant told his provider, on December 16, 2022, that he was managing his carpal tunnel syndrome, his symptoms were mildly intermittent, and his symptoms seemingly improved with being off of work such that he deferred additional medication. (Ex. B8F/27). In fact, during the January 30, 2023, visit, the claimant declined treatment for both ulnar neuropathy and carpal tunnel syndrome. (Ex. B8F/15). Accordingly, these impairments do not satisfy the de minimis severity standards of 20 CFR 416.920(c).
>
> CAR 25-26.

Plaintiff argues the ALJ's determination of Plaintiff's ulnar neuropathy and carpal tunnel syndrome as non-severe does not have the support of substantial evidence. See ECF No. 15 4. Specifically, Plaintiff contends that the ALJ failed to properly evaluate the medical evidence when making his non-severity determination because: (1) the ALJ failed to consider all of Plaintiff's impairments in combination; (2) citing page 512 of the record, the ALJ failed to address the treatment note in which the physician stated that Plaintiff should "[a]void aggravating positioning and activities. . ." when Plaintiff explained that his carpal tunnel and ulnar neuropathy had improved since being off work; (3) the ALJ's explanation lacked logic and rationality in determining that Plaintiff's refusal of treatment sufficiently established the impairments as non-severe; and (4) the ALJ failed to fully and fairly develop the record by not asking Plaintiff why he had declined treatment. See id. at 5-9.

1. Consideration of Impairments in Combination

Plaintiff's argument is well-taken. In determining the severity of impairments at step two, the combined effect of all impairments on the ability to function must be considered, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. Based on the discussion of Plaintiff's ulnar neuropathy and carpal tunnel syndrome above, the ALJ considered each impairment separately and failed to consider the combined effect of all impairments in determining the severity at step two. However, any error at Step 2 is harmless because the ALJ considered the impact of Plaintiff's non-severe impairments

Step 4 when determining Plaintiff's residual functional capacity. See Buck v. Berryhill, 869 F.3d 1040, 1048-49 (9th Cir. 2017).

2. Consideration of Treatment Notes

At page 512 of the record, Plaintiff's treating provider noted that Plaintiff's carpal tunnel syndrome was "[s]eemingly improved with being off work." CAR 512. The doctor also noted as to Plaintiff's ulnar neuropathy that Plaintiff should "[a]void aggravating positioning and activities. . ." Plaintiff appears to argue that these notes are evidence of more than minimal impact on work-related activities. The Court does not agree. Though Plaintiff's carpal tunnel syndrome was "seemingly improved" with not working, this is not to say that this impairment would cause more than minimal impact on Plaintiff's ability to work. Similarly, as to ulnar neuropathy, a recommendation to avoid "aggravating positioning and activities" does not connect the impairment to a more than minimal impact on work-related activities in the absence of an explanation of what would constitute "aggravating positioning and activities." Finally, as the Commissioner notes, Plaintiff stated at the administrative hearing that pain medication alleviates any pain associated with carpal tunnel syndrome or ulnar neuropathy. See ECF No. 18, pg. 5 (citing CAR 65-66).

3. ALJ's Logic

Plaintiff argues: "The ALJ's rationale that because [Plaintiff] declined treatment is sufficient to establish the conditions as non-severe, is simply not logical nor rational." ECF No. 15 at 7. Plaintiff's brief poses a series of rhetorical questions, as follows:

> . . .Even at the prior treatment notes where the EMG is discussed and treatment is identified, Valdez main objective was to get help for his neck pain. Does that mean Valdez does not have issues with his hands? No. Does that mean Valdez's hands do not significantly limit his ability to physically function? No.
>
> Id.

Plaintiff states that the "issue materializes" because consultative examiner Shahid Ali, M.D., opined that Plaintiff would have some limitation in feeling on the right upper extremity. See id. at 7-8.

/ / /

The Court does not agree. Plaintiff's answers to his own rhetorical questions notwithstanding, Plaintiff has not presented affirmative evidence that his carpal tunnel syndrome and ulnar neuropathy, either singly or in combination, more than minimally impact his ability to work. Similarly, while Dr. Ali opined that Plaintiff would have "some limitation in feeling," this is not affirmative evidence of more than minimal impact on Plaintiff's ability to work as there is no connection between work-related activities and the unspecified limitation in feeling. A reasonable interpretation of this evidence is that despite some limitation in feeling Plaintiff's ability to work is not more than minimally impacted. Plaintiff has not presented evidence to refute this reasonable interpretation.

4. Duty to Develop the Record

The ALJ has an independent duty to fully and fairly develop the record and assure the claimant's interests are considered. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers this duty. See id. at 1150. The ALJ may discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record. See id. (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)).

The Court does not find that the ALJ failed to fulfill the duty to develop the record. Specifically, Plaintiff has not established that the record was ambiguous or inadequate, and the ALJ did not so find in analyzing the severity of Plaintiff's impairments at Step 2.

**B. Evaluation of Plaintiff's Subjective Statements and Testimony**

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony. See id.

Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

At Step 4, the ALJ evaluated Plaintiff's subjective statements and testimony. See CAR 27-29. The ALJ began by summarizing Plaintiff's statements and testimony as follows:

> The claimant alleges that he has intense neck and shoulder pain. He has been advised of surgery, which is not guaranteed to help with the pain. He tries to manage the pain by applying heat and cold packs. He takes medication, which helps him to sleep but causes him to feel drowsy. He has headaches that could last for a day. He has difficulty with chores. He naps through the day. He developed weakness and numbness in his hands. He has difficulty sitting without being in pain. He estimates that he could lift 10 pounds at a maximum.
>
> CAR 27.

In evaluating Plaintiff's allegations, the ALJ first outlined a number of instances where Plaintiff's allegations were found to be consistent with the objective evidence. See id. at 27-28. The ALJ concluded generally as follows:

> Although there is evidence that lends support for the claimant's allegations, there is also evidence that is not entirely consistent with his allegations when considering the factors in Social Security Ruling 16-3p. For example, progress notes as early as December 4, 2020, show that the claimant reported that he was doing better with neck pain and sleeping well at night since starting Celebrex. (Ex. B1F/53). In fact, the claimant reported that he no longer needed to take gabapentin (Ex. B1F/54) with earlier progress notes showing that he previously reported having side effects of drowsiness (Ex. B1F/56). While the claimant later reported that he had twitching in his left eye when using Celebrex, he also reported that CBD helped him to sleep, and cervical traction and a TENS unit helped. (Ex. B1F/50).
>
> Although the claimant reported that his pain level was the same or worse shortly after undergoing medial branch blocks on December 6, 2021 (Ex. B6F/7, 9), he had an extended conversation about "conservative care" with his provider about continuing with medication (Ex. B6F/7). Otherwise, the claimant's provider stated that the claimant "got very good relief" from the injections and that his subsequent body and joint pain could have been from stopping his medication. (Ex. B6F/5). In fact, the claimant ultimately underwent additional medial branch block procedures three months later. (Ex. B4F/33). By June 22, 2022, the claimant reported that he had no relief following a radiofrequency ablation procedure, but his provider stated that it would take time for the ablation to provide pain relief. (Ex. B8F/41). Although the claimant reported on January 30, 2023, that he was unable to sleep, walk, or be active due to neck pain, he also reported that he had no further pain in his arms since undergoing two ablation procedures. (Ex. B8F/14). Moreover, the claimant demonstrated normal strength and sensation in his upper extremities despite a Tinel's sign at the right wrist and elbow, and his imaging was read to have shown "minor" disc bulges and central stenosis with reversal of normal lordosis and significant spondylosis at C5-6 and C6-7. (Ex. B8F/14).

> Despite his allegations, the claimant reported on February 16, 2022, that his left shoulder pain worsened but that he used Salonpas and heat/cold packs that sometimes helped. (Ex. B4F/37). By April 4, 2022, progress notes state that the claimant was managing cervical degenerative disc disease with medications and his left shoulder pain was improving with physical therapy. (Ex. B8F/9). By January 30, 2023, cervical spine imaging showed mild degenerative changes with no acute disease. (Ex. B8F/13). Although the claimant reported that he had no relief from a cervical nerve ablation and he had mild relief with medication (Ex. B8F/35), he demonstrated no gross motor deficits, intact strength and sensation, and normal gait upon examination on August 1, 2022 (Ex, B8F/36). By February 14, 2023, the claimant's provider stated that the claimant did not have significant radiculopathy or myelopathy, and the claimant expressed that he was happy with his provider's treatment plan. (Ex. B8F/11).
>
> Accordingly, while there is evidence that is consistent with the claimant's allegations, there is also evidence that is not entirely consistent with his allegations.
>
> CAR 28-29.

Plaintiff argues the ALJ failed to provide clear and convincing reasons in rejecting Plaintiff's statements and testimony of pain. <u>See</u> ECF No. 15 at 9. Specifically, Plaintiff argues:

> The fact of the matter is that the ALJ did not rely on evidence of activities that contradicted the Valdez's testimony or fail to meet a threshold of having application in a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ did not rely on accurate inconsistencies of either Valdez's testimony or between the claimant's testimony and his conduct. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002). The ALJ did not rely on Valdez's 40-year work record. *Robbins v. Soc. Sec. Admin* ., 466 F.3d 880, 883 (9th Cir. 2006) (an ALJ must consider all relevant or probative evidence in the record). The ALJ did not rely on evidence physicians concerning the nature, severity, and effect of the symptoms of which the Valdez complained. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002). Thus, any articulations by the Commissioner to fill the gaps in the ALJ's analysis would constitute *post hoc*. The Court should never entertain the post hoc rationalizations of the Commissioner on review. The Court instead reviews the reasons for the findings of past relevant work based on the four corners of the ALJ decision, only. *Bray v. Commissioner of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009); *SEC v. Chenery Corp*, 318 U.S. 80, 87-88 (1943).
>
> The ALJ failed to articulate legally sufficient reasons for rejecting the testimony of Valdez. Therefore, the court should deem that testimony as true. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Under this approach, a finding of disability is required when further proceedings before the Commissioner on that issue would be futile, the credited testimony requires a finding of disability on a fully developed record. *Id.*; *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017).
>
> ECF No. 15, pgs. 13-14.

In his complaint, ECF No. 1, pg. 3, as well as in his motion for summary judgment, ECF No. 15, pg. 12, Plaintiff argues the ALJ did not state clear and convincing reasons for rejecting Plaintiff's testimony that he has headaches that last a full day and takes naps during the day. Plaintiff additionally argues that the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's testimony that he has developed weakness in his hands, ECF No. 1, pg. 3, or difficulty with chores, ECF No. 15, pg. 12.

Plaintiff's arguments are unpersuasive. As the Commissioner notes, and this Court agrees, the ALJ discounted Plaintiff's subjective symptom allegations because they were not entirely consistent with the overall evidence in the record. See ECF No. 18 pg. 7. The ALJ properly supported his decision with evidence that Plaintiff responded well to treatment of his impairments and showed signs of improvement. See CAR 28-29. Specifically, the ALJ noted that Plaintiff was "doing better with neck pain and sleeping well at night since starting Celebrex;" "'got very good relief' from the injections;" "had no further pain in his arms since undergoing two ablation procedures;" "demonstrated normal strength and sensation in his upper extremities;" "was managing cervical degenerative disc disease with medications and his left shoulder pain was improving with physical therapy;" and Plaintiff "expressed he was happy with his provider's treatment plan." See id.

Regarding Plaintiff's pain and limitations, the Court also finds that the ALJ's decision to discount Plaintiff's testimony was supported by the testimony of several medical experts and directly addressed Plaintiff's alleged limitations. See CAR 29-30. While not conclusive on its own, medical evidence can be used to support the ALJ's findings.

For the foregoing reasons, the Court finds that the ALJ's finding is based on substantial evidence.

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

Based on the foregoing, the Court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 15, is denied;
2. Defendant's motion for summary judgment, ECF No. 18, is granted;
3. The Commissioner's final decision is affirmed; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated: January 16, 2025

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE